United States District Court
Northern District of Indiana

| | | |
|---|---|---|
| KEVIN D. HAMLET, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:12-CV-652 JVB |
| | ) | |
| SUPERINTENDENT, | ) | |
| | ) | |
| Respondent. | ) | |

**OPINION AND ORDER**

Kevin D. Hamlet, a *pro se* prisoner, filed a petition challenging a prison disciplinary proceeding. (DE 1.) On June 19, 2012, Hamlet was found guilty in REF 12-06-0017 of unauthorized possession of property belonging to another in violation of disciplinary rule B215. (DE 11-3 at 1.) The charge was initiated on June 14, 2012, when Don Chamness, an internal affairs investigator, wrote a conduct report based on an investigation he had completed. (DE 11-1 at 1.) According to his investigation report:

> On June 8, 2012, I received information from Re-Entry Specialist 3, Alexis Dean, through her supervisor, Re-Entry Specialist 2, Mia Blank, that Indianapolis Re-Entry Educational Facility Resident Kevin Hamlet, DOC #892772, had received a letter from an offender housed at Plainfield Correctional Facility (IYC), and that Resident Hamlet and Offender Kevin Hudson, DOC # 922839, did not have authorization to communicate. Additionally, the concern was the content of the correspondence. It should be noted that IREF Resident Hamlet was housed at the Plainfield Correctional Facility (IYC) from February 27, 2012, until May 24, 2012.
>
> In the correspondence, Offender Hudson discusses Resident Hamlet conducting and completing legal work on his (Hudson's) behalf. Additionally, in the body of the correspondence, Offender Hudson states: "I don't know what can be done as far as paying you other than what we all ready discussed."
>
> Also in the correspondence:
> "We all have our paperwork so we can copy it and forward it to you but we need to move forward soon."

> Ms. Dean also advised that Resident Hamlet expressed great concern over some legal paperwork that was on a computer, possibly in the PCF/IYC Law Library. I asked Ms. Dean to obtain the correspondence and anything of concern from Resident Hamlet. Ms. Dean sent me, not only the correspondence from Offender Hudson, but legal/court documents regarding the cases of Anthony Jones, DOC # 964283; Anthony D. Hubbard, DOC # 961161; and Timothy Jake, DOC # 147656, all offenders housed at PCF/IYC. I contacted Frank Vanihel and Richard Gaskins, both Internal Affairs Officers at PCF/IYC. Both replied that there had been investigations regarding Resident Hamlet. It had been suspected that Resident Hamlet had been completing legal work for other offenders and receiving payment.
>
> On today's date, June 14, 2012, I was advised by Re-Entry Specialist James Cook, the clerk of the IREF Law Library was wanting to print legal work of Resident Hamlet, however, the documents were for another IREF Resident, Charles Plumb, DOC #931065/U6S-11. Resident Hamlet is also housed in Unit 6 (U6N-11).
>
> Based on this evidence, it is very obvious that Resident Kevin Hamlet, DOC #892772/U6N-11, is not only providing legal services, and conspiring to charge for these services, not only residents at IREF, but offender[s] housed in other facilities as well. Therefore I am charging Resident Hamlet with B240/233 Conspiring to ... [give] or accepting from any person anything of value without proper authorization.

(DE 11-1 at 2.) Hamlet was provided with a copy of the conduct report and the investigation report. (*Id.* at 1.)

On June 18, 2012, Hamlet was formally notified of the charge. (DE 11-2 at 1.) He pled not guilty, declined the assistance of a lay advocate, requested physical evidence showing that he was paid for his legal work, and requested statements from three witnesses: fellow inmates Charles Plumb and Kevin Hudson, who could attest that they never paid him for his legal work; and staff member Alexis Dean, who could attest that he voluntarily turned over the documents in question to her. (*Id.*) Statements were obtained from all three prior to the hearing. Plumb stated, "I never paid him nor did I have the funds to pay him." (DE 11-3 at 4.) Hudson stated that he never paid Hamlet for legal services and claimed the two would often type things for each other as needed. (*Id.* at 5.) Dean provided the following statement:

> Resident Kevin Hamlet #892772 did turn over a letter that he received in the mail from an offender at IYC to me. Resident Hamlet also indicated that he had other offender's [sic] legal work in his property from his job at IYC in the law library. He was instructed to turn over any legal work/paperwork that was the property of another offender to me. He did so as requested.

(DE 11-3 at 3.)

On June 19, 2012, a hearing was held. (DE 11-3 at 1.) According to the hearing report, Hamlet made the following statement:

> I voluntarily took the letter to Ms. Dean because it was from another offender. He mentioned my lawsuit info was still on the computer. Hudson was only doing typing for me. I did not conspire with anyone. I was in possession of other offenders' legal documents from IYC while at IREF.

(*Id.*) After considering staff reports, Hamlet's statement, evidence from witnesses, and copies of the legal documents Hamlet had in his possession, the hearing officer determined that he was more appropriately charged with unauthorized possession of property belonging to another. (*Id.*) The hearing officer found him guilty, also noting that he was "insolent" during the hearing. (*Id.*) Hamlet lost 90 days earned time credits and was demoted to a lower credit-earning class. (*Id.*) He appealed, but his appeals were denied. (DE 11-4 to DE 11-6.) Thereafter, he filed the present petition. (DE 1.)

When prisoners lose earned time credits in a disciplinary proceeding, the Fourteenth Amendment Due Process Clause guarantees them certain procedural protections: (1) advance written notice of the charge; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). To satisfy due process, there must also be "some evidence" in the record to support the

hearing officer's determination. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Hamlet first claims that he was denied the opportunity to present a witness in his defense. (DE 1-1 at 2.) A prisoner has a limited right to call witnesses and present exculpatory evidence in his defense consistent with correctional goals and safety. *Wolff*, 418 U.S. at 566. However, a hearing officer may deny a witness or evidence request that threatens institutional goals or is irrelevant, repetitive, or unnecessary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). The denial of the right to present evidence will be considered harmless unless the prisoner can show prejudice. *Jones v. Cross*, 637 F.3d 841, 847-48 (7th Cir. 2011); *Piggie*, 342 F.3d at 666.

Here, Hamlet claims he wanted to obtain a statement from his former supervisor at the PCF law library, who allegedly would have attested that Hamlet had his permission "to assist these inmates in their matters." (DE 1 at 3, DE 1-1 at 2.) There is no record of Hamlet having made this request during the hearing proceess, and he cannot fault the hearing officer for failing to consider evidence he did not timely request. *Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002) (if an inmate fails to request exculpatory evidence "either before or at the hearing, then the CAB could not have denied him due process by not considering the request"); *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (observing that due process does not require "the consideration of evidence that could have been but was not presented at the hearing").

Nevertheless, Hamlet claims he requested this witness at the time of screening and again at the hearing. (DE 1-1 at 2.) It is unclear why this would not be reflected in the records, since his other requests were properly recorded and statements obtained as he requested, including from a witness at PCF. Regardless, Hamlet has not established prejudice. The fact that he may

4

have had permission to "assist" inmates at PCF with legal matters does not mean he had permission to keep their legal documents among his own belongings, to take these documents with him when he left the facility, or to possess legal documents of inmates at his new facility.[1] Thus, the statement he points to would not have been exculpatory, and he has not established a violation of his due process rights.

Hamlet next claims that he was denied the opportunity to present a defense because the disciplinary charge was changed during the hearing process. (DE 1 at 3.) In *Northern v. Hanks*, 326 F.3d 909 (7th Cir. 2003), the U.S. Court of Appeals for the Seventh Circuit rejected a similar argument made by an Indiana inmate. In that case the petitioner was charged with conspiracy and bribery in connection with an investigation revealing that he and two other inmates were smuggling tobacco into the facility. *Id.* at 909-10. Prior to the hearing, he was given a copy of the investigation report detailing the factual basis for the charges. *Id.* at 910. He was found guilty by the disciplinary board, but on appeal the reviewing authority determined that the facts more appropriately supported a finding that the petitioner had committed "attempted trafficking." *Id.* He modified the charge accordingly. *Id.* The petitioner claimed that this violated his due process

---

[1] Hamlet makes a cursory argument that his activities were protected by the First Amendment. (DE 13 at 1.) Contrary to his suggestion, he did not have an absolute right under the First Amendment to assist other inmates or to possess their legal work. Although the state may not prohibit "jailhouse lawyers" from assisting inmates when they have no other means of accessing the courts, there is no evidence that was the case here; instead it is clear from the record that PCF had a law library available for inmates' use. *See Johnson v. Avery*, 393 U.S. 483, 490 (1969). Furthermore, even when jailhouse lawyers are necessary, "the State may impose reasonable restrictions and restraints upon the acknowledged propensity of prisoners to abuse both the giving and the seeking of assistance in the preparation of applications for relief: for example, by limitations on the time and location of such activities and the imposition of punishment for the giving or receipt of consideration in connection with such activities." *Id.*; *see also Green v. Walker*, 398 Fed. Appx. 166, at *2 (7th Cir. 2010) (the right to act as jailhouse lawyer "does not confer unconditional privileges to retain legal documents belonging to others."); *Kunzelman v. Thompson*, 799 F.2d 1172, 1179-80 (7th Cir. 1986) (jailhouse lawyer can be punished for assisting inmates who are represented by counsel); *Gometz v. Henman*, 807 F.2d 113, 115 (7th Cir.1986) ("The jailhouse lawyer may not (lawfully) charge for his services[.]").

rights, because it prevented him from mounting an appropriate defense. *Id.* The Circuit rejected this argument, since the petitioner had been given a detailed investigation report which provided "ample notice that he would be defending against a possible trafficking charge." *Id.* In other words, because the investigation report gave him the information he needed to defend against the modified charge, his due process rights were not violated. *Id.*

Similarly, here, Hamlet was given a copy of the investigation report which fully detailed the underlying facts, including providing the names of staff witnesses and the names of the inmates whose paper work he was accused of possessing. (DE 11-1 at 2.) Although the hearing officer ultimately adopted a different legal theory for the charge, the underlying facts remained the same. The information provided was sufficient to allow Hamlet to prepare a defense to the possession charge, and he had the same interest in defending against the original and modified charges, since both were B-level offenses. *See Northern*, 326 F.3d at 911 (no due process violation where original and modified charge were both A-level offenses). Based on the record, Hamlet has not established a violation of his due process rights.

Hamlet next claims that his rights were violated because the charge was initiated by staff for retaliatory reasons. (DE 1 at 3, DE 1-1 at 2.) In support he points to an email exchange between prison staff at PCF and the Re-Entry facility, which in his view shows that these individuals conspired to concoct false charges against him.[2] (DE 1-1 at 2.) "[P]risoners are entitled to be free from arbitrary actions of prison officials." *McPherson*, 188 F.3d at 787. However, "even assuming fraudulent conduct on the part of prison officials, the protection from

---

[2] In the emails Gaskin reported that Hamlet had a history of conduct problems. (DE 1-1 at 7.) Vanihel referred to Hamlet as an "all around nuisance" who "grieves quite frequently and questions authority." (*Id.* at 6.) These statements came in response to Chamness's statement: "I'm trying to figure out how to deal with this guy, so any information you can gain or input you have to offer would be greatly appreciated." (*Id.*)

such arbitrary action is found in the procedures mandated by due process." *Id.* In other words, the protections to which Hamlet was entitled are the protections afforded by *Wolff*, and his claim that the charge was false does not itself entitle him to federal habeas relief.

Liberally construed, his claim may be that the evidence was insufficient to find him guilty. In reviewing a disciplinary determination for sufficiency of the evidence, "courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson*, 188 F.3d at 786. "[T]he relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56 (emphasis added). The Court will overturn a guilty finding only if "no reasonable adjudicator could have found [the prisoner] guilty of the offense on the basis of the evidence presented." *Henderson v. United States Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994).

Here, the record shows that Hamlet had in his possession numerous legal documents belonging to inmates at PCF, and was discovered trying to print a legal document belonging to another inmate at his new facility. This constitutes some evidence that he was guilty of unauthorized possession of property belonging to another. *See Hill*, 472 U.S. at 457; *see also Moffat v. Broyles*, 288 F.3d 978, 988 (7th Cir. 2002) (witness statements constituted some evidence); *McPherson*, 188 F.3d at 786 (conduct report provided some evidence to support disciplinary determination). Hamlet claims that he was entitled to have the documents from inmates at PCF because he worked in the law library there, but as stated above, this does not

mean he had authority to take documents with him when he left the facility or to possess legal documents belonging to inmates at his new facility. Accordingly, his argument is unavailing.

Hamlet next claims that he was denied the right to an impartial decision-maker. (DE 1 at 3, DE 1-1 at 2.) In the prison disciplinary context, adjudicators are "entitled to a presumption of honesty and integrity," and "the constitutional standard for improper bias is high." *Piggie*, 342 F.3d at 666. However, due process prohibits a prison official who was personally and substantially involved in the underlying incident from acting as a decision-maker in the case. *Id.* Hamlet does not claim this occurred here. Instead he claims the hearing officer was "more concerned" with a prior dispute Hamlet had with the superintendent of the facility than with reaching a fair determination in his case. (DE 1-1 at 2.) Hamlet does not elaborate on this unrelated dispute with the superintendent, nor does he describe how the hearing officer was involved, if at all. Even if the hearing officer had some prior history with Hamlet, that would not by itself establish a constitutional violation. *See Piggie*, 342 F.3d at 666 (disciplinary board member's involvement in prior case did not violate prisoner's due process rights); *Redding v. Fairman*, 717 F.2d 1105, 1113 (7th Cir. 1983) (declining to require recusal whenever a disciplinary board member was previously sued by the inmate, which would "heavily tax the working capacity of the prison staff" and "vest too much control in a prisoner to determine the Committee make-up"). Based on this record, Hamlet has not established a violation of his due process rights.

As a final matter, Hamlet appears to argue that prison staff violated internal policies in connection with his case. (DE 1-1 at 2, DE 13 at 4.) However, even if he is correct, it would not entitle him to federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal

habeas relief cannot be granted for violations of state law); *Hester v. McBride*, 966 F. Supp. 765, 774-75 (N.D. Ind. 1997) (claim premised on violation of prison policy was not cognizable in federal habeas proceeding).

For these reasons, the petition (DE 1) is **DENIED**.

**SO ORDERED** on May 16, 2013.

                                       s/ Joseph S. Van Bokkelen
                                       Joseph S. Van Bokkelen
                                       United States District Judge
                                       Hammond Division